## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MCGOWAN,

         Plaintiff,

              v.

CAMP AGAWAK, LTD., and MARY
FRIED,

         Defendants.

Case No. 19-cv-01532

Judge Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Plaintiff David McGowan brought this action against Defendants Camp Agawak, Ltd. and Mary Fried in the Circuit Court of Cook County, Illinois. Defendants removed the case. Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. In the alternative, defendants move for transfer to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). For the following reasons, the motion to dismiss for improper venue is denied and the motion to transfer is granted. The court does not address the motion to dismiss for lack of personal jurisdiction; it is denied as moot. The case is transferred to the Western District of Wisconsin under § 1404(a).

### Background

The court draws the following facts from the complaint and the parties' declarations, drawing all reasonable inferences in McGowan's favor. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 808–09 (7th Cir. 2016); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

Camp Agawak, Ltd. is a corporation that "owns and operates Camp Agawak, an overnight camp for girls, located in Minocqua, Wisconsin." Compl., [1-1] at 8 ¶ 4.[1] Minocqua is in northern Wisconsin, about 347 miles from Chicago. The summer camp "has been in operation since 1921" and "is located on 220 acres of land on Blue Lake, in the northwoods of Wisconsin." [14-1] ¶ 3.

---

[1] Bracketed numbers refer to docket entries and are followed by the page and / or paragraph number. Page numbers refer to the ECF page number.

Camp Agawak, Ltd. is a Wisconsin corporation, its principal place of business is in Wisconsin, and it has a registered agent in Wisconsin. [1-1] at 8 ¶ 3; [14-1] ¶ 15. It is not registered to do business in Illinois, and it has no offices outside Wisconsin. [14-1] ¶ 15. Mary Fried, a resident of Wisconsin (the Madison area, [1] at 3 ¶ 13), has owned and been a director of the camp for the past thirty years. [14-1] ¶¶ 1–2. McGowan is a resident of Illinois. [22] at 17 ¶ 1.

In December 2017, Fried hired McGowan as an assistant director for the 2018 camp season. [14-1] ¶ 6. A former camp counselor referred McGowan to Fried. [14-1] ¶ 7. Fried and McGowan initially communicated via phone and email from their respective homes. [14-1] ¶ 7. McGowan then traveled to Madison to meet Fried in person before he was ultimately hired. [14-1] ¶ 8; [23] at 17 ¶ 4.

After he was hired, McGowan and Fried continued to communicate via phone and email. [14-1] ¶ 9. Additionally, McGowan attended Camp Agawak's annual Illinois camp reunion on February 11, 2018 at the Renaissance Chicago North Shore Hotel in Northbrook, Illinois. [14-1] ¶ 11–12. McGowan arrived early to assist with set-up and discussed his role and responsibilities with Fried before and after the event. [22] at 18 ¶ 7. On March 4, 2018, McGowan attended a new camper orientation event, which was held at the same hotel in Northbrook. [14-1] ¶¶ 10, 12. While Fried was in town for this event, she met with McGowan at the hotel to discuss his employment. [14-1] ¶ 12. According to McGowan, he was instructed to attend these events and Fried never suggested that his attendance was optional. [22] at 18 ¶ 7.

McGowan alleges that separately, Fried arranged for a former assistant director, Stephanie Tasman, to conduct around ten training sessions of at least 2 hours each with McGowan in Illinois between December 2017 and April 2018, and that these training sessions included a discussion of "Camp Agawak's purported zero-tolerance policies regarding drugs and alcohol on Camp property, and policies and strategies to deter and address under-age drinking, generally." [22] at 18–19 ¶ 12.

In April 2018, McGowan attended a Camp Agawak alumni event in Deerfield, Illinois. McGowan alleges that at this event, McGowan witnessed Fried's husband, Bill Furman, serving alcohol to minors. [22] at 19 ¶¶ 14–15. According to Fried, this event was put on by the Agawak Alumnae Foundation ("AAF"), a separate charitable entity; Camp Agawak played no role in hosting or paying for the event, and Camp Agawak did not require McGowan to attend. [24-1] at 3 ¶¶ 4–5.

Camp Agawak (again, in Minocqua) was in session for eight weeks during the summer of 2018, spanning June, July, and August 2018. [1-1] at 9 ¶ 11. However, the camp season included additional work by the staff before and after that period, including a week-long orientation, a post-camp session, and a clean-up period. [1-1] at 9–10 ¶¶ 12–13. McGowan and Fried agreed that for employment purposes,

2

the 2018 "camp season" would end after the post-camp session in mid-August.  [1-1] at 10 ¶ 14.  However, McGowan alleges that they also agreed that McGowan would be paid for the season in bi-weekly installments spread out over the course of the 2018 calendar year.  [1-1] ¶ 16.

Before the camp session began, Fried gave McGowan permission to design and purchase "custom hats and charm necklaces bearing the Agawak name and/or logo" to give away to campers.  [1-1] at 11 ¶ 27.  McGowan personally spent over $2,400 on "145 custom hats, and three hundred charm[s], and 150 necklaces." [1-1] at 11 ¶ 28.  He gave some of those items away during the 2018 season but saved the majority and left them in his cabin in anticipation of his return in 2019. [1-1] at 14 ¶ 47.

McGowan alleges that during the 2018 camp season, there were more incidents in Minocqua involving Furman and underage drinking involving camp staff.  [1-1] at 12–14 ¶¶ 35–43, 48.  McGowan further alleges that when McGowan confronted Fried about these events, she "responded angrily" that he should "let [her] handle it."  [1-1] at 14 ¶¶ 49–50.

McGowan alleges that at the end of the 2018 season, Fried assured McGowan that he did "an amazing job" and that she "definitely" wanted him to return for the 2019 season.  [1-1] ¶ 51.  McGowan and his wife relied on this assurance and left possessions in their Camp Agawak cabin.  [1-1] at 14 ¶ 52; [22] at 20 ¶ 19.  At the conclusion of the 2018 camp season, McGowan left Minocqua.  [1-1] at 14 ¶ 52.

Fried claims that she met with McGowan on September 5, 2018, in Milwaukee, Wisconsin to discuss his performance issues.  [14-1] ¶ 16.  She then terminated McGowan's employment in an email on or around September 17. [1-1] at 15 ¶ 57.  McGowan did not receive any bi-weekly payments from Camp Agawak after October 15, 2018.  [1-1] ¶ 58.  McGowan alleges that after McGowan's termination, Fried took McGowan's custom Agawak hats, necklaces, and charms from the cabin and only returned some of them to McGowan.  [1-1] at 15–16 ¶¶ 61– 64.  McGowan alleges that Fried had previously promised McGowan that he could give those items away.  [1-1] ¶ 63.

In February 2019, McGowan brought this six-count action for retaliatory and wrongful termination of employment (Count 1), violation of the Illinois Wage Payment and Collection Act (Count 2), breach of oral contracts (Count 3), unjust enrichment (Count 4), conversion (Count 5), and promissory estoppel (Count 6) in the Circuit Court of Cook County, Illinois.  In March 2019, Defendants removed the case to this district.  [1].  The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  *See* [33].

3

**Discussion**

## I.   Motion to Dismiss

Defendants seek dismissal under Rule 12(b)(3) for improper venue.  In evaluating a Rule 12(b)(3) motion, the court "takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint."  *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1094 (N.D. Ill. 2015).  The court  also construes "all facts" and draws "reasonable inferences" in favor of the plaintiff.  *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).  "In the context of a defendant's motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper." *Video & Sound Serv., Inc. v. Intransa, Inc.*, No. 12-cv-07322, 2013 WL 1568062, at *2 (N.D. Ill. Apr. 12, 2013).

Both parties focus on the general federal venue statute, 28 U.S.C. § 1391. Defendants argue that venue is improper in the Northern District of Illinois under Section 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  McGowan argues the contrary.

However, venue in a case removed from state court is governed not by Section 1391 but by a different statutory provision, 28 U.S.C. § 1441(a).  *See* 28 U.S.C. § 1390(c) ("This chapter shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts."); 28 U.S.C. § 1391(a) ("Except as otherwise provided by law—(1) this section shall govern the venue of all civil actions *brought* in district courts of the United States . . .") (emphasis added); *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953) ("The venue of removed actions is governed by 28 U.S.C. (Supp. V) § 1441(a) . . ."); *Allied Van Lines, Inc. v. Aaron Transfer and Storage, Inc.*, 200 F. Supp. 2d 941, 945 (N.D. Ill. 2002) ("Although the Seventh Circuit has not determined whether § 1391 or § 1441 applies to the venue of removed actions, courts in the Northern District of Illinois have applied § 1441 to analyze the venue of removed actions.") (citing cases); Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3804 (4th ed.) ("Section 1390(c) provides that the general venue provisions do not apply to cases removed from state to federal court.  Instead, Section 1441(a) allows removal only to the federal district embracing the state court in which the case was filed.").

Section 1441(a) states: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

4

Applying Section 1441(a), venue is proper in the Northern District of Illinois; this is the district in which McGowan's state action was pending before it was removed. *See Tiffanie Snider, et al. v. Heartland Beef, Inc.*, No. 19-cv-07386, 2020 WL 469382, at *2 (N.D. Ill. Jan. 29, 2020) ("Here, venue is proper in the Northern District of Illinois because Defendant removed this case from the Circuit Court of Cook County.") (citing 28 U.S.C. §§ 1441(a), 1446(a)); *Wright v. UDL Labs., Inc.*, No. 10-cv-04610, 2011 WL 760067, at *2 (N.D. Ill. 2011) ("Venue is proper in this Court because the case was removed to this Court from the Circuit Court of Cook County."). The motion to dismiss for improper venue is thus denied.

Defendants also move to dismiss for lack of personal jurisdiction, but the court does not need to address that issue. *See In re LimitNone, LLC*, 551 F.3d 572, 576, 578 (7th Cir. 2008) ("the Supreme Court has approved . . . of addressing venue before personal jurisdiction"); *Moore v. Magiera Diesel Injection Servs., Inc.*, No. 18-cv-03762, 2019 WL 2502029, at *1 (N.D. Ill. June 17, 2019) (exercising discretion to address § 1404(a) and transfer the case since "the § 1404(a) issue [was] far easier to resolve than the personal jurisdiction or venue issues").

## II.    Motion to Transfer

Alternatively, Defendants seek transfer to the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

Under this statute, the court may transfer the case to any district court in which McGowan could have brought the action initially, that is, any district court in which venue is proper. Venue can be proper in more than one court. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009). Thus, the fact that venue is proper in the Northern District of Illinois does not defeat Defendants' motion to transfer.

McGowan does not dispute that this case could have been brought in the Western District of Wisconsin. [14] at 12. Pursuant to the general venue statute, venue is proper in, among other places, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Defendants note that both defendants reside in the Western District of Wisconsin, [14] at 12, and McGowan does not contest that point. Thus, the court may transfer the case if the other requirements of Section 1404(a) are satisfied.

Section 1404(a) entails "discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977–978 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))

(alterations omitted).  This is a "flexible and individualized analysis."  *Id.* at 978.
Convenience and the interests of justice are "separate element[s] of the transfer
analysis."  *Id.*  The court addresses each in turn below.

### A.    Convenience

The court first evaluates the relative convenience of each forum.  As the
Seventh Circuit has explained, this analysis takes into account (1) the availability
of and access to witnesses, (2) each party's access to and distance from resources in
each forum, (3) the location of material events, and (4) the relative ease of access to
sources of proof.  *Research Automation*, 626 F.3d at 978.

Defendants argue that the critical events alleged in the complaint occurred
almost entirely in Wisconsin.  Most of McGowan's claims revolve around his
allegations that he observed incidents of underage drinking, reported them, and
was ultimately terminated for doing so.  All these events occurred in Wisconsin,
with the sole exception of the incident at the alumni event in Illinois.  Moreover,
McGowan is also bringing claims regarding property that he alleges is still in
Wisconsin.  [1-1] ¶ 52.  Thus, most material events took place in Wisconsin, and
most or all physical evidence is likely located there as well.  This weighs heavily in
favor of transfer.

Nonetheless, McGowan contends that "[b]esides Mary Fried and her
husband, there are only two or three potential witnesses that reside in Wisconsin."
[22] at 21 ¶ 27.  This conclusory claim is undermined by McGowan's own
allegations, which describe conversations and incidents that took place at the camp
and at bars in Minocqua, suggesting Wisconsin residents other than Fried and her
husband would be relevant witnesses.  *See* [1-1] at 12–16 ¶¶ 33–52, 61, 64.
McGowan also points to fifteen potential witnesses residing in Illinois.  [22] at 21 ¶
28.  But McGowan has not shown that witnesses from Illinois would suffer hardship
from appearing at trial in nearby Wisconsin.  For other stages of the case, residing
in Illinois will be even less of a burden.  *See In re Hudson*, 710 F.3d 716, 719 (7th
Cir. 2013) ("[W]itnesses can be deposed, examined, and cross-examined remotely
and their videotaped testimony shown at trial.").  Without more information, the
location of the witnesses does not point clearly in either direction.

In addition, McGowan argues that as the plaintiff, his choice of venue in
Illinois is entitled to deference.  McGowan is correct that "when the inconvenience
of the alternative venues is comparable, there is no basis for change of venue; the
tie is awarded to the plaintiff."  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665
(7th Cir. 2003).  But when convenience otherwise tips in the opposite direction, the
plaintiff's choice is not dispositive.  *See Budicak, Inc. v. Lansing Trade Grp., LLC*,
No. 18-cv-04966, 2019 WL 3554165, at *3 (N.D. Ill. Aug. 5, 2019).  "The force of the
plaintiff's choice is . . . diminished if the chosen forum has relatively weak
connections with the operative facts giving rise to the claim."  *Faxel v. Wilderness*

*Hotel & Resort, Inc.*, No. 19-cv-04649, 2019 WL 6467317, at \*6 (N.D. Ill. Dec. 2, 2019) (quoting *Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1053 (N.D. Ill. 2012)).  On balance, Wisconsin is a more convenient forum.

### B.    Interests of Justice

In any event, Defendants argue that the interests of justice should control the analysis.  "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Research Automation*, 626 F.3d at 978 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir. 1986)).  For this analysis, the court looks to docket congestion and likely speed to trial in both forums, each court's familiarity with the relevant law, the respective desirability of resolving controversies in each forum, and the relationship of each community to the controversy.  *Id.*

First, Defendants argue that this case will primarily involve the application of Wisconsin law and public policy.  The court agrees.  Regardless of whether the motion to transfer is granted, Illinois choice of law rules will apply.[2]  Illinois has adopted the "most significant contacts" test for choice of law with respect to contractual issues.  *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004).  Under this test, courts consider "the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business of the parties."  *Id.* (quoting *Wildey v. Springs*, 47 F.3d 1475, 1483 (7th Cir. 1995)) (internal quotation marks omitted; alterations in original).  While there are some relevant contacts with Illinois, the most significant contacts in this case are almost certainly with Wisconsin precisely for the same reasons Wisconsin is a more convenient forum.  Accordingly, this case will likely turn on Wisconsin law.[3]

McGowan argues that even if Wisconsin law applies, the laws at issue are not complex or unsettled.  *See Baker v. Smith & Wesson Corp.*, No. 18-cv-03847, 2019 WL 277714, at \*5 (N.D. Ill. Jan. 22, 2019) ("When the law is neither complex nor unsettled, the interests of justice remain neutral.").  It is true that "federal judges routinely apply the law of a State other than the State in which they sit."  *In re Ryze*

---

[2] "Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law."  *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004).  However, "[i]f a case is transferred under § 1404(a), the transferor state's choice-of-law rules govern."  *Moore*, 2019 WL 2502029, at \*5.

[3] While McGowan brings an Illinois Wage Payment and Collection Act, Defendants argue that this claim will likely be dismissed since Defendants are not located in Wisconsin.  *See Parise v. Integrated Shipping Sols., Inc.*, 292 F. Supp. 3d 801, 806 (N.D. Ill. 2017) ("Illinois courts have held that the IWPCA does not apply to employers located out-of-state."); *DeGeer v. Gillis*, 707 F. Supp. 2d 784, 800 (N.D. Ill. 2010); *Liaquat Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 61, 756 N.E.2d 902, 913 (2001).  McGowan does not respond.

*Claims Sols., LLC*, 968 F.3d 701, 709 (7th Cir. 2020) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 67 (2013)).  But "[a]ll else being equal," federal courts have more familiarity with the law of the state in which they sit.  *Tiffanie Snider*, 2020 WL 469382, at *4; *see also Budicak*, 2019 WL 3554165, at *4 ("Expertise with relevant law might be a modestly important factor for cases in which federal courts sit in diversity and are tasked with applying state law; the district court that regularly interprets that particular state law could hold an advantage.").  This factor favors transfer, if only slightly.

Additionally, Wisconsin has a stronger interest than Illinois in resolving this controversy.  The parties accused of wrongdoing are residents of Wisconsin, and most of the alleged wrongdoing occurred there as well.  The fact that McGowan resides in Illinois is not enough to tip the scales.  *See Budicak*, 2019 WL 3554165, at *4 (noting that "[a]lthough Illinois certainly has some interest in resolving a case in which alleged misconduct injured one of its citizens," the state where the alleged misconduct primarily occurred "has the stronger interest").

Finally, "[t]o the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved."  *Ryze*, 968 F.3d at 710 (quotations omitted).  The parties will able to secure a speedier resolution of their case in Wisconsin.  Median time from filing to trial in civil cases is 41.3 months in the Northern District of Illinois and 24.3 months in the Western District of Wisconsin.  *See* Federal Court Management Statistics, June 2020, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2020.pdf.  Docket congestion and time to trial thus favor Wisconsin as well.  *See Faxel*, 2019 WL 6467317, at *7 (noting that "speed-to-trial factor favors transfer" from the Northern District of Illinois to the Western District of Wisconsin).

The relative convenience of the forums and the interests of justice, and ultimately the totality of the factors, favor transfer to the Western District of Wisconsin.  The motion to transfer is granted.

## Conclusion

The motion to dismiss for improper venue is denied.  The motion to dismiss for lack of personal jurisdiction is denied as moot.  The motion to transfer under § 1404(a) is granted.  The case is transferred to the Western District of Wisconsin.


Date: October 1, 2020                    /s/ Martha M. Pacold